Filed 6/30/15  Nguyen v. JNK Investments CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MINH TAM NGUYEN et al., | H040901 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 111CV194930) |
| v. | |
| JMK INVESTMENTS, INC., et al., | |
| Defendants and Appellants. | |

## I.  INTRODUCTION

Plaintiffs,[1] who were tenants in a shopping center, brought a civil action for breach of contract against the entity managing the shopping center, defendant JMK Investments, Inc. (JMK Investments), and against the trustee of the trust that owned the shopping center, defendant John M. Kehriotis, individually and as trustee of the John M. Kehriotis and Nancy M. Kehriotis Living Trust dated March 25, 1993.  Plaintiffs alleged that defendants improperly charged amounts under their lease agreements, including excessive management and landscaping fees.  While the litigation was pending, defendants issued monetary credits to plaintiffs totaling at least $46,000.  The parties

---

[1] Plaintiffs in this action are Minh Tam Nguyen, Teresa T.H. Nguyen, Hung T. Lam, San Quang Bui, Suman Ramakumar, Nguyen Tran, Huong Ngoc Nguyen, Thao T. Pham, and MTM Seafood, Inc.

eventually entered into a settlement in which defendants agreed to pay plaintiffs $22,500 to resolve the matter, with costs and attorney's fees to be determined by the court.

Plaintiffs subsequently filed a motion for more than $20,000 in costs and nearly $129,000 in attorney's fees. Defendants opposed the motion. The trial court granted the motion in part, awarding costs in the amount of $16,961 and attorney's fees in the amount of $76,000 without any explanation of its reasoning. A judgment was thereafter entered in favor of plaintiffs for the sum of the costs and fees.

On appeal, defendants contend that the trial court erred by awarding plaintiffs unreasonable and unnecessary costs. Defendants also argue that plaintiffs were not entitled to attorney's fees pursuant to Civil Code section 1717.[2] Defendants further contend that, to the extent plaintiffs were entitled to attorney's fees, the court abused its discretion with respect to the amount awarded, and the matter must be remanded for further consideration by the trial court and for a statement of its reasoning.

Plaintiffs have cross-appealed. They contend that the trial court erred by failing to award the full amount of costs and attorney's fees that they requested.

For reasons that we will explain, we will affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Parties*

Plaintiffs were tenants in a shopping center owned by the John M. Kehriotis and Nancy M. Kehriotis Living Trust. The Kehriotises set up a corporation, defendant JMK Investments, which managed the shopping center for the trust. JMK Investments apparently owned and operated Pyramid Landscaping, an entity not licensed under the Contractors' State License Law (Bus. & Prof. Code, § 7000, et seq.). JMK Investments charged plaintiffs for, among other things, the work of Pyramid Landscaping.

---

[2] All further statutory references are to the Civil Code unless otherwise indicated.

**B. *The Complaint***

In February 2011, plaintiffs filed a complaint against defendant JMK Investments and defendant John Kehriotis, individually and in his capacity as trustee of the trust. Each plaintiff allegedly entered into a lease with defendants for a space at the shopping center. As part of the leases, defendants had certain obligations regarding maintenance and care of the property. At the same time, plaintiffs were required to pay a percentage of the expenses associated with common area maintenance (CAM) and a management fee not to exceed 10 percent of the common area expenses.

Plaintiffs alleged that defendants improperly charged for "numerous fraudulent expenses including but not limited to 1) management fees in excess of 10% of the CAM; 2) book keeping fees; 3) utility fees for non Common Areas; 4) excessive landscaping fees; 5) unitemized taxes, insurance and maintenance fees; and 6) expenses associated with improvements to the property." Plaintiffs also alleged that defendants "artificially increased the amount of expenses incurred in maintaining the property by contracting for services to be rendered to the [property] between themselves." Defendants also allegedly failed to provide itemized quarterly statements as required, and plaintiffs were "not aware of the exact amount of overcharges" until November 2010 when there was a "gross overcharge for maintenance." Plaintiffs alleged on information and belief that the total amount of overcharges were in excess of $1 million.

Plaintiffs alleged 10 causes of action, including breach of contract and tort claims. Among other relief, plaintiffs sought restitution, compensatory damages, punitive damages, and an accounting to determine the amount of allowable expenses under the lease agreements.

**C. *The Monetary Credits***

In May 2011, a few months after the complaint was filed, defense counsel informed plaintiffs' counsel by letter that the trust had "decided to change its policies" regarding two fees. First, a bookkeeping fee, which was based on 10 percent of the CAM

charges, would be renamed the management fee. Second, a management fee that had been previously charged to tenants for defendant JMK Investments' management of the shopping center would no longer be charged. The letter further indicated that the trust would issue monetary credits to plaintiffs for the formerly labeled management fees that had been paid since 2008. The total amount credited was nearly $40,000. Defense counsel stated in the letter that "the Trust is not offering the credits in exchange for the Tenants dismissing the accounting action. The credits are being given in the hope they will facilitate the amicable resolution of this matter. The Trust will continue to audit its records for purposes of determining whether further credits are appropriate. If the Trust decides it will apply further credits, they will be applied without condition."

In August 2012, defense counsel sent a letter and spreadsheets to plaintiffs' counsel, explaining that the spreadsheets showed the permissible management fees, the management fees actually charged by defendant JMK Investments, and the credit if it "charged more than was permissible." The spreadsheets covered 2007 to 2011. The letter also addressed plaintiffs' expert's calculation of damages. Defense counsel contended that certain adjustments needed to be made in plaintiffs' calculation. Near the end of the letter, defense counsel stated, "In light of the most recent credits being offered by JMK and the admonitions of the Court, perhaps it is time that you reconsider your position and dismiss this matter." Plaintiffs have interpreted the spreadsheets attached to the letter as reflecting a credit of nearly $8,200, while defendants contend the spreadsheet reflects a credit of approximately $6,200.

### D. *The Settlement Negotiations*

In the meantime, between April 2012 and January 2013, the parties engaged in settlement negotiations while the trial date was repeatedly continued. Defendants offered to settle for $15,000, while plaintiffs' settlement offers ranged from $60,000 to $1.15 million per plaintiff (or a total of $540,000 to $10.35 million for all nine plaintiffs).

4

**E.** *The Trial Court's Statement of Decision Regarding Landscaping Charges*

The parties eventually agreed that a significant portion of plaintiffs' claim for damages related to the propriety of landscaping charges that were passed on to plaintiffs as a component of the CAM charges due under the leases. The parties also agreed that a ruling by the trial court on the issue would significantly impact settlement. The parties ultimately stipulated to having the court determine the following two legal issues regarding the landscaping charges: (1) whether defendants were required to use a licensed landscaping contractor and/or a tree service contractor for certain landscaping services, and (2) whether defendants could charge plaintiffs for landscaping services that were performed through an unlicensed contractor.

In May 2013, the trial court issued a statement of decision based upon agreed facts by the parties. According to the statement of decision, the trust set up defendant JMK Investments to manage the shopping center, and JMK Investments owned and operated Pyramid Landscaping, an unlicensed entity. JMK Investments charged plaintiffs for the work of Pyramid Landscaping. The court determined that defendants were required to use a licensed landscaping contractor and/or tree service contractor for certain, but not all, landscaping services. The court also determined that defendants could charge plaintiffs for the reasonable value of landscaping services that were performed by an unlicensed contractor for items that did not require a contractor's license. Pyramid Landscaping could thus seek to establish the reasonable charges for those services it performed that did not require a license. The court observed that if the matter went to trial, it would need to determine the reasonable rate for the services that did not require a license.

The trial court also briefly discussed in the statement of decision the relationship between Pyramid Landscaping and defendant JMK Investments. The court explained that JMK Investments created Pyramid Landscaping, that Pyramid Landscaping "initially appears to be an independent business entity," but that Pyramid Landscaping did not file

5

a fictitious business name statement in Santa Clara County or in San Jose. Pyramid Landscaping executed a landscaping service contract with JMK Investments. The court observed that certain provisions in the landscaping service contract between Pyramid Landscaping and JMK Investments "raise serious questions whether this document was designed to deceive third parties by giving an appearance of an independent relationship which did not exist."

## F. *The Parties' Settlement*

The parties thereafter entered into a settlement agreement effective September 6, 2013. Defendants agreed to pay plaintiffs a total of $22,500 to resolve the matter, with attorney's fees and costs to be determined by the court. The parties also agreed that the settlement proceeds could be considered by the court in determining whether plaintiffs received a net monetary recovery and were the prevailing party under Code of Civil Procedure section 1032, subdivision (a)(4).

## G. *Plaintiffs' Motion for Attorney's Fees and Costs*

In early 2014, plaintiffs filed a motion for attorney's fees and costs, along with a memorandum of costs. Regarding costs, plaintiffs sought more than $20,000. Plaintiffs argued that, based on the settlement proceeds, they received a net monetary recovery within the meaning of Code of Civil Procedure section 1032, and therefore they were entitled to costs. Plaintiffs further argued that they had reasonably and necessarily incurred costs, including for depositions, service of process, and expert fees.

Plaintiffs also requested attorney's fees in the amount of $128,802.50 based on an attorney's fee provision in the parties' leases. Plaintiffs contended that they were the prevailing party for purposes of attorney's fees within the meaning of section 1717 because they had obtained a net monetary recovery based on the settlement. Plaintiffs' attorney's fee request was based on 418.4 attorney hours at the rate of $250 per hour, plus 243.2 paralegal hours at the rate of $100 per hour, for the period of February 2011 through September 2013.

**H.** *Defendants' Motion to Strike or Tax Costs and Opposition to Motion for Attorney's Fees*

Defendants filed a motion to strike or tax costs. They contended that the costs for depositions, service of process, and expert witnesses were not reasonable and/or necessary.

Defendants also filed opposition to plaintiffs' motion for attorney's fees. Among other arguments, defendants contended that plaintiffs were not the prevailing party for purposes of an attorney's fee award under section 1717. Defendants also argued that the monetary credits they issued to plaintiffs in May 2011 and August 2012 could not be considered in determining the net monetary recovery or the prevailing party. Defendants further argued that, to the extent the court awarded attorney's fees, plaintiffs should receive less than the amount requested.

**I.** *Plaintiffs' Opposition to Defendants' Motion to Strike or Tax Costs*

Plaintiffs filed opposition to defendants' motion to strike or tax costs. Plaintiffs contended that the costs they incurred were reasonable and necessary to the conduct of the litigation. Plaintiffs also filed a reply brief in support of their motion for attorney's fees. Plaintiffs argued that, based on the relief they sought and the relief they obtained – including defendants' monetary credits to correct the CAM overcharges, defendants' settlement payment, and defendants' cessation of fraudulent billing practices – they were the prevailing party under section 1717. Plaintiffs also contended that the attorney's fees they incurred were reasonable.

Defendants filed a reply brief in support of their motion to strike or tax costs. Defendants continued to argue that their pre-settlement monetary credits to plaintiffs could not be considered in determining the prevailing party. Defendants also argued that the costs sought by plaintiffs were not reasonable or necessary.

**J.** *The Trial Court's Orders Regarding Attorney's Fees and Costs*

A hearing was held on the motions. By written order filed March 25, 2014, the trial court granted plaintiffs' motion for attorneys' fees after "having considered the moving and responding documents, together with the arguments of counsel, and . . . having personally reviewed all six volumes of pleadings in this matter." The court awarded plaintiffs $76,000 in attorney's fees but did not provide an explanation of how it calculated the amount.

The trial court also granted in part defendants' motion to strike or tax costs. The court taxed some of the fees of plaintiffs' expert in the amount of $3,140.60. The court denied defendants' motion to tax other costs.

On April 23, 2014, a judgment was filed in favor of plaintiffs and against defendants in the amount of $92,961, based on attorney's fees of $76,000 and costs of $16,961. Defendants filed amended notices of appeal from the judgment on April 30, 2014. Plaintiffs filed an amended notice of cross-appeal on May 6, 2014.

### III. DISCUSSION

Defendants' appeal and plaintiffs' cross-appeal challenge the trial court's orders regarding costs and regarding attorney's fees. We will first consider the appeal and cross-appeal on the issue of costs, and then we will consider the appeal and cross-appeal on the issue of attorney's fees.

**A.** *Costs*

On appeal, defendants contend that the trial court erred in awarding costs to plaintiffs for five depositions, for service of process, and for the fees of plaintiffs' three experts. Plaintiffs in their cross-appeal contend that the trial court erred by taxing the costs for one of their expert's fees.

Code of Civil Procedure section 1032 provides for the recovery of the costs of suit to a "prevailing party." (*Id.*, subd. (b).) A prevailing party within the meaning of this section includes "the party with a net monetary recovery." (*Id.*, subd. (a)(4).) In this

8

case, the parties' settlement agreement provides that "[s]ettlement proceeds can be considered in determining whether Plaintiffs have received a net monetary recovery for purposes of deciding prevailing party status under Code of Civil Procedure section 1032, subdivision (a)(4)." (See *Khavarian Enterprises, Inc. v. Commline, Inc.* (2013) 216 Cal.App.4th 310, 320; Code Civ. Proc., § 1032, subd. (c).) As plaintiffs obtained a net monetary recovery of $22,500 from defendants by way of settlement, plaintiffs are the prevailing parties entitled to costs.

Code of Civil Procedure section 1033.5, subdivision (a) sets forth specific items allowable as costs. Code of Civil Procedure section 1033.5 further provides that any allowable costs must be "reasonable in amount" and "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." (*Id.*, subd. (c)(2), (3).)

"If items on their face appear to be proper charges, the verified memorandum of costs is prima facie evidence of their propriety, and the burden is on the party seeking to tax costs to show they were not reasonable or necessary." (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1266 (*Jones*); accord, *Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1486-1487 (*Adams*).) "[A] party's 'mere statements in the points and authorities accompanying its notice of motion to strike cost bill and the declaration of its counsel are insufficient to rebut the prima facie showing [that the costs were necessarily incurred].' " (*Jones*, *supra*, at p. 1266.) " 'On the other hand, if items are properly objected to, they are put in issue and the burden of proof is on the party claiming them as costs.' [Citation.]" (*Ibid.*) "Whether an item listed on the memorandum was reasonably necessary is a question of fact to be decided by the trial court. [Citation.]" (*Adams*, *supra*, at p. 1487.) A trial court's decision regarding whether costs were reasonably necessary is reviewed for abuse of discretion. (*Id.* at pp. 1484, 1488.)

## 1. Depositions

In their memorandum of costs, plaintiffs sought deposition costs of $679.30 for Maria Zavorskas, $947.80 for John Kehriotis, $579.90 and $555.95 for Isabella Rennie (reflecting a deposition over the course of two days), and $482.66 for plaintiffs' expert Robert Griswold. The trial court denied defendant's motion to tax these costs.

On appeal, defendants contend that the depositions of Zavorskas, Kehriotis, and Rennie, who were defendant JMK Investments' property manager, president, and accountant, respectively, were not reasonably necessary. Defendants argue that all three individuals were deposed about the CAM charges and thus their depositions were duplicative. Further, the depositions were taken more than a year after the litigation was commenced, and after all accounting records and necessary information had been produced. Defendants also argue that written discovery requests would have been more cost effective to obtain information regarding matters such as who owned Pyramid Landscaping and the identity of the shareholders of JMK Investments. Regarding the deposition of plaintiffs' expert Griswold about a landlord's standard of care, defendants argue that the deposition was "unnecessary and unreasonable in light of the issues involved in the case" concerning landscaping charges. Lastly, defendants contend that plaintiffs failed to provide a "breakdown or explanation" of the expenses incurred for each deposition which made it "impossible" for defendants to determine whether the costs were recoverable.

Plaintiffs respond that the deposition costs were reasonably necessary because defendants designated Zavorskas, Kehriotis, and Rennie as trial witnesses. Further, these individuals were deposed about unlawful CAM charges and the ownership of defendant JMK Investments and Pyramid Landscaping. Plaintiffs' expert witness Griswold was designated to and did testify about various issues in the case, including issues related to the hiring of third party licensed contractors to perform work at the shopping center. Regarding the basis for the claimed deposition costs, plaintiffs cite to a declaration from

counsel and copies of invoices and account statements concerning the costs of taking the depositions and the costs of the deposition transcripts.

We determine that the trial court did not abuse its discretion in awarding deposition costs. Allowable costs include "[t]aking, video recording, and transcribing necessary depositions including an original and one copy of those taken by the claimant and one copy of depositions taken by the party against whom costs are allowed." (Code Civ. Proc., § 1033.5, subd. (a)(3).) The depositions at issue were taken between April and July 2012, which was prior to defendants sending the August 2012 letter to plaintiffs concerning the second set of monetary credits, and prior to the parties stipulating to a court determination regarding the landscaping/licensing issues. The issues addressed at the depositions, such as CAM charges, landscaping charges, use of a landscaping contractor, and the relationship between Pyramid Landscaping and defendant JMK Investments, thus appeared relevant to the case at the time. The record also reflects that defendants ultimately identified Zavorskas, Kehriotis, and Rennie as trial witnesses. Under the circumstances, the court did not abuse its discretion in determining that the depositions were reasonably necessary to the conduct of the litigation. Further, regarding the cost of the depositions, plaintiffs, in opposition to defendants' motion to tax costs, provided a declaration from counsel and invoices and account statements from the reporting services that transcribed the depositions. Defendants fail to demonstrate that the trial court abused its discretion in determining that all the deposition costs were recoverable under Code of Civil Procedure section 1033.5, subdivision (a)(3).

### 2. Service of process

In their memorandum of costs, plaintiffs sought costs for service of process on defendant JMK Investments, as well as costs for service of process on three nonparties: (1) Aircom Mechanical in the amount of $75, (2) GT Waste in the amount of $49.98, and (3) California Capital Insurance Company in the amount of $193.66.

11

Defendants moved to tax the costs of service of process on the three nonparties. The trial court denied defendants' motion.

On appeal, defendants contend that allowable costs do not include costs for service on nonparties. Defendants also argue that the costs, which were "presumably for document subpoenas," were not reasonably necessary because defendant JMK Investments "produced documents that included all necessary information regarding the dispute at issue." Defendants contend that plaintiffs did not "need the information received from [the third parties] in order to proceed with this matter."

Plaintiffs respond that the costs for service of subpoenas on third parties by a registered process server are recoverable. Plaintiffs also contend that the subpoenas were necessary as they sought defendants' insurance policies, bills for CAM charges, and other documents, which were not produced by defendants in discovery.

Defendants fail to establish that the trial court erred in refusing to tax costs for service of the subpoenas. Allowable costs include "[s]ervice of process by a . . . registered process server." (Code Civ. Proc., § 1033.5, subd. (a)(4).) Defendants fail to articulate a legal argument or provide a citation to legal authority supporting their contention that the costs for serving a subpoena on a nonparty are not allowable under Code of Civil Procedure section 1033.5, subdivision (a)(4). Further, defendants provided only a conclusory declaration from counsel to support their contention that they produced all necessary information to plaintiffs and that plaintiffs did not need to subpoena any third party documents. (See *Jones*, *supra*, 63 Cal.App.4th at p. 1266 ["party's 'mere statements in the points and authorities accompanying its notice of motion to strike cost bill and the declaration of its counsel are insufficient to rebut the prima facie showing' " that the costs were necessarily incurred].) Under the circumstances, defendants fail to establish that the trial court abused its discretion in awarding costs for service of the subpoenas on the third parties.

12

### 3.  Expert fees

Defendants contend that the trial court erred in awarding expert fees for (1) Richard R. Fimmel, (2) Robert S. Griswold, and (3) Stephen M. Reiss.  In their cross-appeal, plaintiffs contend that the trial court erred by reducing Griswold's fee.

#### a.  background

In their memorandum of costs, plaintiffs sought expert fees for:  (1) Griswold in the amount of $6,281.20; (2) Fimmel in the amount of $2,500; and (3) Reiss in the amount of $7,150.60.  Defendants moved to strike or tax the expert fees on the grounds that they were not necessary to the litigation or reasonable.  In opposition, plaintiffs contended that the fees were reasonable and necessary.  Plaintiffs provided (1) declarations from counsel regarding the experts, (2) curricula vitae of the experts, and (3) time records for Griswold and Reiss.  In the declarations, counsel stated that Fimmel was paid a "retainer" of $2,500, and that Fimmel charged this amount as a "one-time nonrefundable charge."

The trial court denied defendants' motion to tax the fees of Fimmel and Reiss.  The court taxed Griswold's fees by $3,140.60, which represented one-half the amount that plaintiffs had requested.

#### b.  analysis

The parties' leases provide that the prevailing party may recover expert witness fees.  On appeal, although defendants object to the amount of fees awarded by the trial court, they do not challenge the court's authority to award such fees.  (Compare *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC* (2010) 185 Cal.App.4th 1050, 1066 [expert witness fees may be recovered as costs pursuant to the parties' agreement by the normal procedures for requesting and taxing costs] with *Carwash of America-Po v. Windswept Ventures No. 1* (2002) 97 Cal.App.4th 540, 541-542 [expert witness fees recoverable pursuant to a contractual provision may not be awarded as costs but must be must be pleaded and proven separately].)

13

### i. Richard R. Fimmel

Defendants contend that the trial court erred in awarding $2,500 in expert fees for Fimmel because the amount was a "flat retainer fee" and plaintiffs failed to provide any detail regarding the hours Fimmel expended in the case.

The record reflects that Fimmel had been a real estate attorney and real estate broker since the 1970's. His hourly rate as an expert for consultation, depositions, and trial testimony was $400, and he charged a "one-time nonrefundable charge of $2,500." Fimmel was designated as an expert witness by plaintiffs to testify about the custom and practice in interpreting commercial leases. When plaintiffs designated Fimmel as an expert witness, plaintiffs' counsel stated in a declaration that Fimmel would "be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the specific testimony, including any opinion and its basis that the expert is expected to give at trial."

The record contains excerpts from Fimmel's deposition, which lasted 27 minutes. Fimmel testified that defendants' handling of CAM charges at the shopping center was not consistent with the provisions of the lease or the standard and practice in the industry. In making this determination, Fimmel looked at a random selection of CAM statements for a particular tenant over the course of a calendar year and analyzed the charges in those statements. He found inappropriate bookkeeping fees and management fees. Fimmel testified about typical practices in the industry regarding property management fees.

In view of the record, the trial court did not abuse its discretion in determining that the time spent by Fimmel in the case was reasonably necessary to the conduct of the litigation, and that $2,500 was a reasonable fee for Fimmel's time. Plaintiffs' complaint involved the propriety of defendants' charges, including bookkeeping and management fees, under their leases. Fimmel's opinions appeared relevant to that issue. In view of the relevance of Fimmel's opinions, the time he spent in reaching his opinions and

14

preparing for his deposition, including reviewing CAM statements, was reasonably necessary to the conduct of the litigation. Regarding the reasonableness of the $2,500 fee for Fimmel, we observe that at his hourly rate of $400, Fimmel would have had to have worked at least 6.25 hours to generate $2,500 in fees ($2,500 / $400 per hour = 6.25 hours). Given that Fimmel, at a minimum, had conversations with counsel, reviewed litigation-related documents in order to reach his several opinions, and had to prepare for his deposition, we do not believe that it was an abuse of discretion for the trial court to conclude that Fimmel had spent at least 6.25 hours in connection with the litigation.

### ii. Robert S. Griswold

Defendants contend that the trial court erred by only reducing Griswold's fee of $6,281.20 to $3,140.60, which represents one-half the amount requested by plaintiffs. Defendants argue that the 16.75 hours Griswold spent on the case was inflated and unreasonable because (1) all of his opinions were general opinions about the standard of care for the management of commercial properties with respect to CAM charges, (2) his deposition took less than an hour, (3) his conclusions that defendant JMK Investments should have hired a licensed contractor and bid out the contract, and about industry custom and standards, were heavily based on his expertise and experience and very loosely based on the facts in this matter, and (4) he did not prepare a report or provide any numerical calculations.

The record reflects that Griswold had managed residential and commercial properties for many years and had been a court-appointed receiver. Griswold was designated as an expert witness by plaintiffs to testify as to the propriety of, among other matters, failing to seek qualified contractors to perform services at a shopping center and the policies and procedures a management company should use.

At his deposition, Griswold testified that his opinions concerned the overall standard of care, custom, and practice regarding commercial property management and

15

the billing of CAM charges, rather than an analysis of the accuracy of actual invoices, in order to avoid "cumulative expert testimony." Griswold testified that a management fee of only 10 percent of the CAM charges was permissible. Regarding landscaping charges, Griswold testified that for the nature and size of the shopping center, multiple bids should be obtained for the monthly landscaping service, and the entity hired should be an unaffiliated company with a contractor's license who offered the best value. Griswold further testified that everything charged to the tenant, such as plants, irrigation, and so forth, should be for items actually needed at the property. Griswold's deposition lasted less than an hour.

Griswold's invoice to plaintiffs' counsel detailed the dates and amount of time he spent on each task in connection with the case between May 2012 and April 2013. The tasks included 5.25 hours of communications with plaintiffs' counsel's office; 4.5 hours to review the depositions of Zavorskas, Kehriotis, and Rennie as well as to review a spreadsheet from plaintiffs' expert Reiss; 5.5 hours to review 549 pages of documents including leases and CAM billings; and 1.5 hours for internet research on defendants. Griswold's invoice reflected a total of 16.75 hours for these tasks, and his hourly rate was $375. He did not charge plaintiffs for his deposition time because defense counsel had already paid him for that time.

Defendants fail to persuasively articulate why it was an abuse of discretion for the trial court to reduce Griswold's fee of $6,281.20 by only 50 percent. Griswold's invoice detailed the amount of time he spent on each task in the case. The court reduced Griswold's fee by one-half after apparently agreeing with defendants' contention that Griswold offered only general opinions about industry standards and that he primarily relied on his experience rather than the specific facts of the case. Regarding the reduced amount that the court did allow for Griswold's expert fee, we believe it was reasonably necessary for the expert to acquaint himself with some of the facts of the case by reviewing case-related documents and/or having case-related communications with

16

counsel before rendering opinions on industry customs and standards that were relevant to the case. We do not believe an abuse of discretion has been shown by the court's failure to reduce the expert's fee by a greater amount.

In their cross-appeal, plaintiffs contend that the trial court erred by reducing Griswold's fee. They argue that Griswold's document review, as well as his review of the depositions taken in the case and his communications with plaintiffs' counsel, were all necessary for him to prepare for his deposition and to provide his opinions.

We are not persuaded by plaintiffs' argument regarding the necessity of all the time that Griswold spent on the case. First, plaintiffs do not explain the necessity of Griswold's 1.5 hours of internet research on defendants. Second, while we believe it was reasonably necessary for Griswold to acquaint himself with some of the facts of the case by reviewing case-related documents and/or having case-related communications with counsel before rendering opinions in the case, plaintiffs fail to persuasively articulate why it was necessary for Griswold to spend 10 hours reviewing depositions and other documents in addition to spending more than 5 hours in communications with plaintiffs' counsel's office in order for Griswold to reach his particular opinions and to prepare for his deposition. No abuse of discretion has been shown by the court's 50 percent reduction of expert fees for Griswold.

### iii. Stephen M. Reiss

Defendants contend that expert fees of $7,150.60 for Reiss, a forensic accountant, were unreasonable and unnecessary. According to defendants, Reiss simply took a CAM statement that had been prepared by defendant JMK Investments, removed certain charges as directed by plaintiffs, and then recalculated the CAM charges.

Plaintiffs respond that Reiss reviewed the charges, eliminated improper charges, recalculated the bookkeeping and management fees at 10 percent, and determined the correct amount of charges. Plaintiffs contend that expert fees for Reiss were therefore reasonable and necessary.

17

The record reflects that Reiss was a certified public accountant. Reiss was designated as an expert witness by plaintiffs to testify about the propriety of quarterly CAM charges, among other matters.

At his deposition, Reiss testified that the "scope" of his assignment from plaintiffs was to review the CAM charges; eliminate charges that were improper according to the lease or otherwise, such as the landscaping and bookkeeping charges; "recompute the management fee" at 10 percent with those charges removed; and "substitute the correct number in the charges." Plaintiffs' counsel's office identified the bookkeeping charge as improper and asked him to remove the charge. Reiss independently confirmed the impropriety of the charge and conducted his own research on the propriety of the landscaping charge. Reiss ultimately prepared a document based on his analysis of CAM charges. The document showed defendant JMK Investments' total CAM charges (based on CAM statements it had issued), the "expected" charge, and the overcharge.

Plaintiffs submitted a detailed time record regarding the time Reiss spent in the case. The time record indicates that Reiss, in addition to calculating overcharges, also spent time verifying defendant JMK Investments' calculation of credits. We cannot conclude that it was unreasonable or unnecessary for plaintiffs to retain an accountant to conduct an independent review of prior charges in the case in order to calculate overcharges, or to confirm the accuracy of defendants' new calculations concerning credits, particularly where the basis for defendants' charges under the leases and the calculations of those charges were at issue. No abuse of discretion has been shown by the trial court's failure to reduce expert fees for Reiss.

**B. *Attorney's Fees***

On appeal, defendants contend that the trial court erred in determining that plaintiffs were the prevailing party for purposes of awarding attorney's fees under section 1717. Defendants further contend that the trial court committed reversible error by failing to explain how it calculated the amount of attorney's fees.

18

In their cross-appeal, plaintiffs contend that the trial court erred by awarding only $76,000 in attorney's fees. They contend that there "was no basis for this reduction in light of the circumstances of this case."

We will consider each contention in turn.

### 1. Prevailing party determination under Civil Code section 1717

As we stated above, Code of Civil Procedure section 1032 provides for the recovery of the costs of suit to a "prevailing party." (*Id.*, subd. (b).) Allowable costs include attorney fees when authorized by contract. (Code Civ. Proc., § 1033.5, subd. (a)(10)(A).) Attorney's fees awarded pursuant to section 1717 are specifically authorized as allowable costs. (Code Civ. Proc., § 1033.5, subd. (c)(5).)

Section 1717, subdivision (a) provides that, "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the *party who is determined to be the party prevailing on the contract*, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Italics added.) In this case, the parties' lease agreements provide that the prevailing party is entitled to recover reasonable attorney's fees, expert witness fees, and court costs.[3]

Although both Code of Civil Procedure section 1032 and Civil Code section 1717 refer to prevailing parties, a finding that plaintiffs are the prevailing parties under Code of Civil Procedure section 1032 for purposes of costs, "although a necessary prerequisite for

---

[3] The parties' leases provide that, in an action instituted by the landlord John M. Kehriotis to enforce his rights, the prevailing party is entitled to recover reasonable attorney's fees, expert witness fees, and court costs. Although the instant action was instituted by the plaintiff tenants rather than by the landlord Kehriotis, none of the parties dispute that plaintiffs may seek attorney's fees under this contractual attorney's fees provision pursuant to section 1717. (See *Hsu v. Abbara* (1995) 9 Cal.4th 863, 865, 870; *Pacific Custom Pools, Inc. v. Turner Construction Co.* (2000) 79 Cal.App.4th 1254, 1268, 1270.)

an award of attorney fees as costs," is "not determinative" of whether they are also the prevailing party entitled to recover attorney's fees under the lease agreements and section 1717. (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 438 (*Zintel Holdings*).) The issue of the prevailing party for purposes of costs under Code of Civil Procedure section 1032 must be analyzed separately from the issue of the prevailing party for purposes of attorney's fees under section 1717. (*David S. Karton, A Law Corp. v. Dougherty* (2014) 231 Cal.App.4th 600, 607 (*Karton*).) We thus turn to the legal standard for awarding attorney's fees to the prevailing party under section 1717.

Section 1717 defines the phrase "party prevailing on the contract" as "the party who recovered a greater relief in the action on the contract." (*Id.*, subd. (b)(1).) The trial court "may also determine that there is no party prevailing on the contract for purposes of this section." (*Ibid.*) Section 1717 "vests the trial court with discretion in making the prevailing party determination." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 (*Hsu*).) On appeal, " ' "[s]uch a determination will not be disturbed on appeal absent a clear abuse of discretion." ' [Citation.]" (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 349 (*Kachlon*).)

"[I]n deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' [Citation.]" (*Hsu*, *supra*, 9 Cal.4th at p. 876.) "[A] court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise. [Citation.]" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 622 (*Santisas*).)

20

The California Supreme Court has explained that section 1717 "allow[s] those parties whose litigation success is not fairly disputable to claim attorney fees as a matter of right, while reserving for the trial court a measure of discretion to find no prevailing party when the results of the litigation are mixed." (*Hsu*, *supra*, 9 Cal.4th at p. 876.) For example, if a party obtains a "simple, unqualified victory" on the only contract claim in the action, the party is entitled to attorney's fees as a matter of law and the trial court may not deny fees by finding that there was no party prevailing on the contract. (*Id.* at p. 877; see also *id.* at p. 876.)

However, "[i]f neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 (*Scott Co.*).) " '[T]ypically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought.' [Citation.]" (*Hsu*, *supra*, 9 Cal.4th at p. 875.)

"[I]n determining litigation success, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective. [Citations.]" (*Hsu*, *supra*, 9 Cal.4th at p. 877, italics omitted.)

In this case, defendants state that "neither party achieved a complete victory." They contend, however, that they obtained "greater relief" under section 1717, subdivision (b)(1) because plaintiffs sought more than $1 million in the complaint and made a settlement demand of more than $10 million but ultimately recovered only $22,500. Defendants also argue that "very limited charges were determined to be improper," specifically, charges for landscaping services by an unlicensed contractor when a contractor's license was required. According to defendants, the licensing

requirement was not the basis for the litigation and the complaint did not seek reimbursement of landscaping fees for services requiring a license and thus plaintiffs did not prevail on any cause of action in the complaint. Defendants further contend that plaintiffs' settlement demands were unreasonable, that the case ultimately settled for an amount closer to defendants' settlement offer, and that the average recovery per plaintiff represents a nominal amount. Lastly, defendants contend that the court erred to the extent it considered the credits that defendant issued in May 2011 and August 2012 while the litigation was pending.

Plaintiffs respond that they succeeded in their litigation objectives, which included compensatory damages according to proof, an accounting to identify the allowable expenses, and restitution of money paid in excess of the amounts allowed. Although plaintiffs acknowledge that they did not recover the full amount of money that they had demanded, they point to their allegation in the complaint that they were "not aware of the exact amount of overcharges charged to each" plaintiff "[d]ue to the un-itemized and suspect nature of many of the charges." Plaintiffs further observe that the $22,500 settlement was larger than defendants' prior settlement offer of $15,000. Plaintiffs also contend that the court did not err to the extent it considered the monetary credits that defendant issued while the litigation was pending.

We determine that the trial court did not abuse its discretion in concluding that plaintiffs were the prevailing parties on the contract. (§ 1717; *Kachlon*, *supra*, 168 Cal.App.4th at p. 349.) Plaintiffs' claims in the action, as summarized by defendants' counsel in a declaration in opposition to plaintiffs' motion for attorney's fees, "centered around alleged overcharges for certain landscaping charges, management fees and bookkeeping fees included in the common area expenses ('CAMS') for the period of February 24, 2007 through December 31, 2011 . . . ." The record reflects that, as a result of the litigation, plaintiffs were able to secure (1) an audit by defendants of prior charges under the leases, (2) the elimination of a particular management fee and a credit for past

payments of that fee, (3) an additional credit for excessive management fees that were charged, and (4) a monetary settlement for improper landscaping charges. In view of the plaintiffs' litigation objectives concerning improper charges and the extent to which those objectives were realized by defendants' elimination of a fee, providing monetary credits, and agreeing to a monetary settlement for another fee, we do not believe the trial court abused its discretion in concluding that plaintiffs recovered greater relief in the action as compared to defendants, and that plaintiffs were therefore the parties prevailing on the contract. (§ 1717, subd. (b); *Hsu*, *supra*, 9 Cal.4th at pp. 876, 877; *Santisas*, *supra*, 17 Cal.4th at p. 622.)

Although plaintiffs' large settlement demands suggest that they overestimated the value of the case, their overestimation appears to have been due at least in part to the difficulty in ascertaining the proper charges under the leases, a matter which defendants themselves determined only after conducting an audit or review of prior charges. Further, although the total amount plaintiffs received in the form of credits and a settlement payment may have been significantly less than the amounts they demanded during the course of the litigation, it was still "within the discretion of the trial court to determine which party prevailed on the contract" where, as in this case, none of the parties appeared to achieve a "complete victory." (*Scott Co.*, *supra*, 20 Cal.4th at p. 1109; see *Jackson v. Homeowners Assn. Monte Vista Estates-East*, (2001) 93 Cal.App.4th 773, 788 [trial court did not abuse its discretion in awarding attorney's fees to plaintiffs where there was not a "clear win by either side" and "substantial arguments" supported both sides' claims of victory].)

We are not persuaded by defendants' contention that the issues concerning the landscaping charges were not encompassed by plaintiffs' complaint. Plaintiffs alleged in the complaint that defendants "improperly charged" plaintiffs "numerous . . . expenses" including "excessive landscaping fees." Contrary to defendants' assertion on appeal, the complaint does not limit the excessive landscaping fees to only those inflated as a result

23

of defendants contracting for services between themselves. Moreover, the parties agreed in a written stipulation that the trial court's determination of legal issues regarding landscaping charges for an unlicensed contractor's services would have a "significant impact on Plaintiffs' claims for damages and their remaining claims and that a ruling on this issue by the Court would have a significant impact on the parties for purposes of a final resolution by settlement . . ." The trial court subsequently determined that defendants could not charge for landscaping services by an unlicensed contractor if the work required a contractor's license. The parties thereafter entered into a settlement agreement in which defendants agreed to pay plaintiffs a total of $22,500 to resolve the case. In their opening brief on appeal, defendants implicitly acknowledge that the settlement payment was intended at least in part to resolve the issue of landscaping charges. It thus appears that the issue of landscaping charges and the use of an unlicensed contractor were part of plaintiffs' contract claim in this litigation.

We are also not persuaded by defendants' contention that plaintiffs' conduct regarding settlement, including "unreasonabl[e]" and "grossly inflated" settlement demands, warrants a finding that defendants were the parties prevailing on the contract. "[I]n determining litigation success, courts . . . should be guided by 'equitable considerations.' " (*Hsu*, *supra*, 9 Cal.4th at p. 877, italics omitted.) However, "equitable considerations must be connected to *litigation success* on the claims presented," rather than the litigation tactics or motives of the parties. (*Silver Creek, LLC v. BlackRock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533, 1540; see *id.* at p. 1541.) "[T]he trial court may not invoke equitable considerations unrelated to litigation success, such as the parties' behavior during settlement negotiations or discovery proceedings, except as expressly authorized by statute. (See, e.g., *Deane Gardenhome Assn. v. Denktas*[ (1993)] 13 Cal.App.4th 1394, 1398-1399 [trial court improperly relied on party's obstreperous behavior and uncompromising litigation stance to find there was no prevailing party]; *Bruckman v. Parliament Escrow Corp.* (1987) 190 Cal.App.3d 1051, 1059 [stating that

24

party's failure to offer to compromise did not affect that party's right to attorney fees under section 1717].) To admit such factors into the 'prevailing party' equation would convert the attorney fees motion from a relatively uncomplicated evaluation of the parties' comparative litigation success into a formless, limitless attack on the ethics and character of every party who seeks attorney fees under section 1717." (*Hsu*, *supra*, at p. 877.) We therefore decline to consider plaintiffs' behavior during settlement negotiations in the absence of a statute authorizing consideration of such conduct.

Lastly, we are not persuaded by defendants' contention that the trial court could not consider the monetary credits that defendants issued to plaintiffs while the litigation was pending. As an initial matter, defendants acknowledge that it is not clear that the court actually considered the monetary credits. However, even assuming the court considered the monetary credits in determining which party prevailed on the contract under section 1717, we find no abuse of discretion for the following reasons.

Defendants contend that the parties' settlement agreement limits the trial court from considering anything other than "settlement proceeds," and that settlement proceeds do not include monetary credits.

The portion of the settlement agreement cited by defendants does not support the contention that the trial court was precluded from considering monetary credits when determining the party prevailing on the contract under section 1717. The portion of the settlement cited by defendants states: "The determination of plaintiffs' motion for costs and attorney's fees, shall be pursuant to California Civil Code section 1717 and Code of Civil Procedure section 1032, respectively. Settlement proceeds can be considered in determining whether Plaintiffs have received a net monetary recovery for purposes of deciding prevailing party status under Code of Civil Procedure section 1032, subdivision (a)(4). Further, in such determination by the court, the holding of Chinn v. KMP Property Management et a1. (166 Cal. App. 4th 175 . . .) shall not be applicable."

The reference to "settlement proceeds" in the parties' settlement agreement thus pertains to the trial court's determination of "net monetary recovery for purposes of deciding prevailing party status under Code of Civil Procedure section 1032, subdivision (a)(4)" regarding costs. The quoted portion of the settlement agreement does not expand or limit, or otherwise address, the trial court's determination of "the party who recovered a greater relief in the action" for purposes of deciding the "party prevailing on the contract" under section 1717, subdivision (b)(1) regarding attorney's fees. Defendants do not cite any provision in the settlement agreement that precludes the trial court from considering monetary credits in making its determination regarding attorney's fees under section 1717. (See *Santisas*, *supra*, 17 Cal.4th at p. 622 [in determining the issue of attorney's fees under section 1717, a court may consider whether a party "has realized its litigation objectives, whether by judgment, settlement, or otherwise"]; *Hsu*, *supra*, 9 Cal.4th at p. 877 [equitable considerations should guide the determination of litigation success, and a party denied direct relief on a claim may still be the prevailing party if it achieved its main litigation objective].) Moreover, the fact that the settlement agreement is, according to defendants, an integrated agreement is irrelevant, as the trial court's consideration of monetary credits would not be at variance with any of the settlement terms cited by defendants.

For similar reasons, defendants' argument that monetary credits are not within the definition of "prevailing party" and "net monetary recovery" under Code of Civil Procedure section 1032, subdivision (a)(4) does not advance their position that the trial court erred in considering monetary credits when deciding the issue of attorney's fees. The issue of prevailing party for purposes of *costs* under Code of Civil Procedure section 1032 must be analyzed separately from the issue of prevailing party for purposes of *attorney's fees* under section 1717, as the two statutes define prevailing party differently. (*Karton*, *supra*, 231 Cal.App.4th at p. 607; see also *Zintel Holdings*, *supra*, 209 Cal.App.4th at p. 438 [finding of prevailing party under Code of Civil Procedure

§ 1032 is "not determinative" of whether that party is also the prevailing party under § 1717]; *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1335, fn. 3 [rejecting the contention that Code of Civil Procedure § 1032, subd. (a)(4) must be construed in light of § 1717].)

Defendants also argue that their issuance of monetary credits was unrelated to the litigation against them. For example, defendants contend that the first monetary credit issued in May 2011 was due to a policy change regarding the bookkeeping fee. Defendants contend that the second monetary credit issued in August 2012 "was issued as part of a regular, yearly reconciliation of CAM charges which reconciliation is required by the Plaintiffs' leases."

However, defendants do not cite any provision in the leases requiring a yearly reconciliation, nor do they otherwise cite evidence in the record that supports the contention that the reconciliations were "part of a regular, yearly" occurrence. Moreover, even assuming defendants regularly reconciled CAM charges every year, the monetary credits issued in May 2011 and August 2012 were for fees and charges going as far back as 2007, which corresponds to the timeframe covered by plaintiffs' complaint. Under the circumstances, it would be reasonable for the trial court to infer that the litigation commenced by plaintiffs in February 2011 was the impetus for defendants reviewing prior charges and issuing monetary credits. Further, the May 2011 letter from defense counsel to plaintiffs' counsel stated that the credits were "being given in the hope they will facilitate the amicable resolution of this matter." The August 2012 letter from defense counsel to plaintiffs' counsel similarly referred to the parties' litigation and stated in part, "In light of the most recent credits being offered by JMK and the admonitions of the Court, perhaps it is time that you reconsider your position and dismiss this matter." Based on the timing of the monetary credits, the time period covered by the credits, and the correspondence by defense counsel concerning the credits and the litigation, the trial

27

court could reasonably conclude that the monetary credits were being given as a result of plaintiffs' pending litigation against defendants.

In sum, defendants fail to establish that the trial court abused its discretion in determining that plaintiffs were the parties prevailing on the contract under section 1717.

## 2. Trial court's failure to explain basis for attorney's fees award

Defendants contend that the trial court committed reversible error by failing to "specifically state" how it calculated the amount of attorney's fees awarded, citing *In re Vitamin Cases* (2003) 110 Cal.App.4th 1041.

A trial court is not required to issue a statement of decision regarding an attorney's fee award.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140 (*Ketchum*); *In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 589; *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67 (*Gorman*) [finding "no California case law analogue to [Code of Civil Procedure] section 632 requiring trial courts to explain their decisions on all motions for attorney fees and costs, or even requiring an express acknowledgment of the lodestar amount"].)  Further, on appeal " ' "[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]" (*Ketchum*, *supra*, at p. 1140.)  As a general rule, and in the absence of evidence to the contrary, "we presume that the trial court has properly followed established law.  [Citations.]" (*People v. Diaz* (1992) 3 Cal.4th 495, 567 (*Diaz*); see *Gorman*, *supra*, at p. 67.)

In *In re Vitamin Cases*, *supra*, 110 Cal.App.4th at page 1052, the appellate court stated, "When the record is unclear whether the trial court's award of attorney fees is consistent with the applicable legal principles, we may reverse the award and remand the case to the trial court for further consideration and amplification of its reasoning.  (See, e.g., *Ketchum*[, *supra,*] 24 Cal.4th [at p.] 1142 . . . ; *Thayer*[ *v. Wells Fargo Bank* (2001)] 92 Cal.App.4th [819,] 846 [(*Thayer*)]; *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 629-630 (*Ramos*).)"  However, neither *In re Vitamin Cases*, nor any

28

of the cases it cited, reversed solely due to the lack of an explanation by the trial court. Rather, in each case, the reviewing court expressed concern about apparent errors in the trial court's decision. (See *In re Vitamin Cases*, *supra*, at p. 1061 ["We reverse the award of attorney fees and costs in this case and remand that issue to the trial court for reconsideration in light of the specific concerns we have expressed"]; see also *id.* at pp. 1054-1058, 1060-1061; *Ketchum*, *supra*, at p. 1141 ["we are persuaded that Ketchum's assertions of error have sufficient merit to require remand of this matter for recalculation of attorney fees under an appropriate exercise of discretion pursuant to the standard we have clarified herein"]; see also *id.* at pp. 1141-1142; *Thayer*, *supra*, at p. 835 [failing to "find the requisite factual basis in the record" justifying an increase in the lodestar award and concluding that trial court abused its discretion in applying a multiplier]; see also *id.* at pp. 835-839, 846; *Ramos*, *supra*, at p. 629 ["Under all the relevant circumstances, we would not be justified in presuming in this case that the trial court considered only appropriate factors in applying this particular multiplier to the lodestar figure"]; see also *id.* at pp. 626, 627, 629.)

In this case, defendants fail to provide a persuasive argument supporting a conclusion that the trial court abused its discretion in its determination of the amount of attorney's fees to award plaintiffs. Defendants contend, based on the premise that the court could not properly consider their monetary credits to plaintiffs, that the attorney's fee award of $76,000 was more than three times the amount of plaintiffs' recovery of $22,500 under the settlement agreement. Without any citation to authority, defendants argue that the "fee award should be a fraction of the sum recovered."

As we have explained, however, the trial court could properly consider the monetary credits, which included approximately $40,000 in May 2011 and at least $6,000 in August 2012, in determining the relief recovered by plaintiffs. Further, even assuming plaintiffs recovered only $22,500 pursuant to the written settlement or, according to defendants, only approximately $12,778 for disputed landscaping services, defendants

29

fail to provide a persuasive argument or legal authority supporting the proposition that an award of attorney's fees of $76,000 amounts to an abuse of discretion under the circumstances of this case, based solely on the size of plaintiffs' recovery and the amount of attorney's fees awarded. (See *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1507-1508 [explaining that the amount of money involved in the litigation is a consideration in determining an award of attorney's fees but is not a controlling factor]; *Stokus v. Marsh* (1990) 217 Cal.App.3d 647, 651, 656-657 [attorney's fee award of $75,000 was reasonable where plaintiff was awarded $6,166 in damages].)

In sum, " ' "error must be affirmatively shown" ' " (*Ketchum*, *supra*, 24 Cal.4th at p. 1140), and "we presume that the trial court has properly followed established law" in the absence of evidence to the contrary (*Diaz*, *supra*, 3 Cal.4th at p. 567; see *Gorman*, *supra*, 178 Cal.App.4th at p. 67). We conclude that defendants have not shown a basis for reversing the attorney's fee award.

**3. The trial court's failure to award the full amount of attorney's fees requested**

In their cross-appeal, plaintiffs contend that the trial court erred by awarding only $76,000 in attorney's fees because there was no basis for reducing the requested amount of $128,802.50.

**a. background**

Plaintiffs sought $128,802.50 in their motion for attorney's fees. The amount was based on 418.4 attorney hours at the rate of $250 per hour, plus 243.2 paralegal hours at the rate of $100 per hour, for the period of February 2011 through September 2013. In support of the motion, plaintiffs provided time records showing the tasks performed by the attorneys and paralegals.

In opposition to plaintiffs' motion, defendants contended that plaintiffs' claimed lodestar figure should be reduced because certain amounts were unnecessary. In particular, defendants contended that the following amounts should be deducted from the fees sought by plaintiffs: (1) $3,850 for approximately 25 hours of "duplicative attorney

30

time" where more than one attorney attended or participated in the same hearing or conference; (2) $1,075 for three attorneys to take 4.3 hours to complete case management statements on Judicial Council forms; (3) $24,320 for all paralegal time due to the absence of information about the paralegals' qualifications and based on the particular tasks billed; (4) $10,700 for attorney time in preparing for a jury trial, including jury instructions and verdict forms, because plaintiffs failed to post fees and waived a jury trial; (5) $1,775 for time spent handling unrelated matters, including an unlawful detainer; (6) $13,622.50 for unnecessary and excessive time spent on discovery matters; (7) $6,525 for excessive time spent on settlement; and (8) $17,575 for "bulk billing blocks" making it "impossible to determine" the amount of time spent on each task, for a total reduction of nearly $80,000 from the lodestar amount.

Defendants further contended that the matter involved a simple contract dispute between the parties regarding CAM charges, that the amount in controversy was "minimal" compared to plaintiffs' "grossly inflated prayer and settlement demands," and that the amount of attorney's fees requested did not bear any rational relationship to the amount recovered. To the extent the court awarded any attorney's fees, defendants contended the amount should be no more than $20,000, "an amount reasonable for the prosecution of a simple breach of contract claim."

In reply, plaintiffs disputed the eight categories of billing entries that defendants claimed warranted a reduction in the lodestar. Plaintiffs also contended that the matter was a complex case, that they had made efforts to minimize attorney's fees, and that they had obtained a net monetary recovery along with the cessation of defendants' fraudulent billing practices.

At the hearing on the motion for attorney's fees, the trial court stated that it had read the parties' papers and most of the cases cited. The court asked about plaintiffs' 10 causes of action, and plaintiffs' counsel stated that "the same work . . . went into each of these causes of action." The court also elicited information about other aspects of the

31

litigation, including offers to compromise under Code of Civil Procedure section 998 and discovery disputes. In a subsequent written order, the trial court awarded $76,000 in attorney's fees, after "having considered the moving and responding documents, together with the arguments of counsel, and . . . having personally reviewed all six volumes of pleadings in this matter . . . ."

### b. analysis

Section 1717, subdivision (a) provides that "[r]easonable attorney's fees shall be fixed by the court." "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' [Citation.] The reasonable hourly rate is that prevailing in the community for similar work. [Citations.] The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. [Citation.] Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary. [Citation.]" (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*).)

" 'After the trial court has performed the calculations [of the lodestar], it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it is a reasonable figure.' 'It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court . . . . [Citations.] The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] . . . The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the

32

success or failure, and other circumstances in the case.' [Citation.]" (*PLCM Group*, *supra*, 22 Cal.4th at pp. 1095-1096.) " 'A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.' [Citation.]" (*Gorman*, *supra*, 178 Cal.App.4th at p. 99.)

"[T]he trial court has broad authority to determine the amount of a reasonable fee. [Citations.]" (*PLCM Group*, *supra*, 22 Cal.4th at p. 1095.) " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong["] '—meaning that it abused its discretion. [Citations.]" (*Ibid.*) "[D]iscretion must not be exercised whimsically, and reversal is appropriate where there is no reasonable basis for the ruling or the trial court has applied 'the wrong test' or standard in reaching its result. [Citation.]" (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239 (*Nichols*).)

In this case, plaintiffs claimed a lodestar figure of $128,802.50, but the trial court awarded only $76,000 in attorney's fees. Because the trial court awarded less than plaintiffs' claimed lodestar figure, the trial court either reduced the lodestar, applied a negative multiplier, or both.

"In determining the lodestar figure, the trial court was not required to specify which hours it had allowed or did not allow." (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1250.) Further, a court's failure to specify the factors it considered in selecting a multiplier does not compel a reversal. (*Id.* at p. 1249.) " 'In reviewing a challenged award of attorney fees and costs, we presume that the trial court considered all appropriate factors in selecting a multiplier and applying it to the lodestar figure. [Citation.] This is in keeping with the overall review standard of abuse of discretion, which is found only where no reasonable basis for the court's action can be shown. [Citation.]' [Citations.]" (*Id.* at pp. 1249-1250.)

33

Plaintiffs contend that there was no basis for reducing the lodestar amount by more than 40 percent. According to plaintiffs, this was a "difficult" case. Plaintiffs characterize the case as involving 11 parties, 10 causes of action, "multiple percipient and expert witnesses," "substantial documentary evidence," and "novel issues of law that were decided in Plaintiffs' favor," including regarding the use of an unlicensed landscaping contractor and whether plaintiffs could be charged for such services. Plaintiffs contend that their counsel "was skilled, and made considerable efforts to minimize" their attorney's fees, as evidenced by the stipulation to have the trial court make a determination regarding the landscaping/licensing issue. Plaintiffs further contend that they achieved "considerable success," including the recovery of more than $70,000 and the cessation of defendant's "fraudulent billing practices which would have otherwise resulted in additional improper charges to Plaintiffs over the remaining duration of their" leases.

We are not persuaded by plaintiffs' argument that the trial court had no basis for reducing the amount of attorney's fees requested. Although the case involved 11 parties, each of the nine plaintiffs entered into "substantially similar" leases with the two defendants according to the allegations of plaintiffs' complaint. Plaintiffs do not point to anything in the record to suggest that there were significant differences between the plaintiffs regarding their legal positions for example, or that the two defendants presented anything other than a joint defense. Similarly, although plaintiffs alleged 10 causes of action, plaintiffs' counsel stated at the hearing on the attorneys' fee motion that "the same work . . . went into each of these causes of action." Thus, the number of parties and the number of causes of action do not appear to have been an accurate indicator of whether the case was complex.

Regarding the number of witnesses and documents, the record reflects that plaintiffs deposed defendant John M. Kehriotis and two employees of defendant JMK Investments regarding CAM charges and other issues. Plaintiffs also apparently retained

34

three expert witnesses.  Beyond these six witnesses, plaintiffs do not specifically identify any other relevant witness in their briefing on appeal.  Plaintiffs also do not provide a citation to the record concerning the "substantial documentary evidence" purportedly involved in this case, nor do they otherwise detail the content or significance of the "substantial" documents.

Similarly, plaintiffs do not identify the "novel issues of law" decided in their favor in this case, other than the two landscaping/licensing issues, which the trial court disposed of in a few pages in a relatively straightforward statement of decision.  The trial court's statement of decision on the landscaping/licensing issue ultimately resulted in a settlement of only $22,500 a few months later.  Defendants had earlier acknowledged certain errors in its charges under the leases by issuing monetary credits to plaintiffs in May 2011 and August 2012.  In fact, the first set of credits in May 2011 was issued shortly after the civil action was filed in February 2011.

Regarding efforts to minimize attorney's fees, the only effort identified by plaintiffs is the stipulation by all parties to have the trial court make a determination concerning the two landscaping/licensing issues.  This stipulation occurred in January 2013, nearly two years after the action had been filed, and only after plaintiffs' attorneys had already spent a significant amount of time on the case according to their time entries.

We further observe that in the trial court, defendants in opposition to plaintiffs' motion for attorney's fees contended that the fees for eight categories of attorney or paralegal time should be reduced, resulting in a smaller lodestar figure.  Plaintiffs on appeal do not address the substance of those contentions by defendants, or otherwise establish that it would have been error for the court to reduce the lodestar on the basis of one or more of those eight categories.  (See *Ketchum*, *supra*, 24 Cal.4th at p. 1140 [" ' "error must be affirmatively shown" ' "].)

The trial court indicated that it had considered the attorney's fee motion and opposition papers, and that it had "personally reviewed all six volumes" of the court file

35

as part of its determination of the fee award. " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court." ' " (*PLCM Group*, *supra*, 22 Cal.4th at p. 1095.) The trial court may have determined that, as argued by defendants below, some of the claimed attorney or paralegal hours were not reasonable, or that the lodestar figure should be reduced because, for example, the litigation involved a noncomplex contract dispute where the final settlement amount recovered by the plaintiffs, after defendants had essentially conceded other monetary credits, was relatively small in relation to the amount of fees requested. (See *id*. at pp. 1095-1096.) On appeal, plaintiffs fail to establish that the amount of attorney's fees ultimately awarded by the court was " ' "clearly wrong" ' " (*Ketchum*, *supra*, 24 Cal.4th at p. 1132), or that "there is no reasonable basis for the ruling" (*Nichols*, *supra*, 155 Cal.App.4th at p. 1239). Plaintiffs thus fail to show that the trial court abused its discretion by reducing the requested attorney's fee award to $76,000.

## C. *Attorney's Fees on Appeal*

We observe that defendants have not prevailed on their appeal, and plaintiffs have not prevailed on their cross-appeal. Nevertheless, plaintiffs contend that they are entitled to recover attorney's fees on appeal. " 'Although this court has the power to fix attorney fees on appeal, the better practice is to have the trial court determine such fees.' [Citation.]" (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1267.) Accordingly, upon an appropriate motion, the trial court is to consider whether attorney's fees incurred on appeal should be awarded and, if so, the amount.

## IV. DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal. Upon an appropriate motion, the trial court is to consider whether attorney's fees incurred on appeal should be awarded and, if so, the amount.

36

_____

BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:




_____

MIHARA, J.




_____

MÁRQUEZ, J.